UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KEVIN MANNING,

    Plaintiff,

v.                                            Case No: 2:18-cv-223-FtM-UAM

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Plaintiff, Kevin Manning, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed an application for a period of disability and DIB and an application for SSI on April 23, 2009, alleging disability beginning April 13, 2005. (Tr. 565-81). The applications were denied initially and upon reconsideration. (Tr. 457-60, 461-64). Plaintiff requested a hearing and on February 22, 2011, a hearing was held before an administrative law judge ("ALJ"). (Tr. 354-82). The ALJ denied Plaintiff's claim by decision dated April 28, 2011, but the Appeals Council issued a remand order on August 26, 2011. (Tr. 398-406, 411). The ALJ again denied Plaintiff's claim on November 27, 2012, however, the Appeals Council issued another remand order on April 17, 2014. (Tr. 416-446, 447-53).

On remand, a different ALJ, Maria Northington, held a second remand hearing on November 19, 2014, and, on May 8, 2015, issued a partially favorable decision. (Tr. 24-58, 209-67). The decision was partially favorable because the ALJ found that Plaintiff met the definition of disability on and after January 1, 2014 but not before. (Tr. 28-49). Because Plaintiff's date last insured was December 31, 2007, this finding resulted in a denial of her DIB claim, and an award of SSI benefits beginning in January 2014 rather than in April 2009 when she filed her application for SSI benefits. Plaintiff requested review by the Appeals Council, which denied the request for review on June 6, 2016. (Tr. 17-19). The Council granted a request for an extension of time to file

the civil action on March 2, 2018. Plaintiff initiated the instant action by Complaint (Doc. 1) on April 4, 2018. The parties having filed a joint memorandum setting forth their respective positions, this case is ripe for review.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 13, 2005, the alleged onset date. (Tr. 31). At step two, the ALJ found that since April 13, 2005, the alleged onset date, Plaintiff has had the following severe impairments: mild to moderate lumbar facet arthropathy with disc space loss at L3/L4 (all other discs are intact), borderline intellectual functioning with history of learning problems and mood disorder with depression and anxiety. (Tr. 31). The ALJ further found that beginning January 1, 2014, Plaintiff has had the following severe impairments: disc collapse at L3/L4 with significant spurring and increased chronic lumbar pain, mild to moderate lumbar facet arthropathy with disc space loss at L3/L4 (all other discs are intact), borderline intellectual functioning with a history of learning problems, and mood disorder with depression and anxiety. (Tr. 31). At step three, the ALJ found that since the alleged onset date of disability, April 13, 2005, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 32).

Before proceeding to step four, the ALJ found that prior to January 1, 2014, Plaintiff had the residual functional capacity ("RFC") to

> perform a wide range of light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the Dictionary of Occupational Titles (D.O.T.) and regulations, as well as, lift carry 10 pounds frequently. This includes sedentary work as defined in Dictionary of Occupational Titles (D.O.T.) and the regulations. The claimant had no limits for sitting in an eight-hour workday. He was capable of standing and/or walking for up to six hours in an eight-hour workday. He was able to perform occasional postural functions of climbing ramps, stairs, and stooping. He

was to perform no crawling, no kneeling, no crouching, and no climbing of ladders, ropes, or scaffolds. In the course of work, he should have been allowed the ability to optionally alternate between sitting and standing at will, but such would not cause him to be off-task. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. In the course of work, the claimant was to have no exposure to extremes of heat, humidity, or cold temperatures. Secondary to his mental impairments, he retained the capacity to understand, remember and carry-out simple instructions and perform simple, routine, repetitive tasks as consistent with unskilled work. In the course of work, he was to have no contact with the public and only occasional contact with coworkers and supervisors, occasional being defined as occasional interaction and coordination, but not necessarily proximity to the same.

(Tr. 33-34). The ALJ further found that beginning January 1, 2014, Plaintiff became disabled and retained the RFC to

> perform less than sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is limited to sitting for only four hours in an eight-hour workday. He is able stand and/or walk for less than two hours in an eight-hour workday. He must use a cane when walking or standing. He must alternate between sitting and standing as needed. He is unable to perform any postural functions except occasional stooping. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. In the course of work, the claimant is to have no exposure to extremes of heat, humidity, or cold temperatures. Secondary to his mental impairments, he retains the capacity to understand, remember and carry-out simple instructions and perform simple, routine, repetitive tasks as consistent with unskilled work. In the course of work, he is to have no contact with the public and only occasional contact with coworkers and supervisors, occasional being defined as occasional interaction and coordination, but not necessarily proximity to the same. However and secondary to the co-morbidity of his mental, neurological, and physical impairments in combination with his chronic pain, he is unable to sustain attention and concentration for greater than four hours in an eight-hour workday. The claimant cannot perform even unskilled sedentary work, as he is unable to physically and mentally sustain work for 8 hours in an eight-hour workday 40 hours per week.

(Tr. 44-45). At step four, the ALJ found that since April 13, 2005, Plaintiff has been unable to perform his past relevant work as a brick layer. (Tr. 46).

At step five, the ALJ relied on the testimony of a vocational expert to find that prior to January 1, 2014, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 46). Specifically, the ALJ found that prior to January 1, 2014, Plaintiff could perform such occupations as surveillance system monitor, mail clerk, merchandise marker, checker, and office helper. (Tr. 47). The ALJ further found that beginning on January 1, 2014, considering Plaintiff's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 48). The ALJ concluded that Plaintiff had not been under a disability prior to January 1, 2014, but became disabled on that date and has continued to be disabled through the date of the decision, May 8, 2015. (Tr. 49).

**II.     Analysis**

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by arbitrarily determining the established onset date of January 1, 2014; (2) whether the ALJ erred by failing to properly analyze the medical opinions; and (3) whether the ALJ erred by failing to properly analyze Plaintiff's credibility. The Court begins its analysis by considering Plaintiff's second raised issue.

Plaintiff argues that the ALJ improperly analyzed and weighed the respective opinions of Dr. Sareen, Dr. Hill, Dr. Rizkallah, and Dr. Schosheim. (Doc. 26 p. 19-27). In addition, Plaintiff argues that the ALJ improperly considered the medical opinions only in isolation and failed to acknowledge the consistency in agreeing that Plaintiff's inability to perform full-time work far predates January 2014. (Doc. 26 p. 26). In response, Defendant argues that the ALJ properly evaluated the opinion evidence and substantial evidence supports the weight assigned to each opinion. (Doc. 26 p. 32-39).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical

records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

### **Dr. Sareen's Opinion**

The record shows that on February 9, 2011, treating physician Rajan Sareen, M.D., opined that Plaintiff can stand/walk 1 hour at a time for 3 hours total, sit 1 hour at a time for 2 hours total in an 8-hour workday, lift 5-10 pounds occasionally, and use his hands for fine and gross manipulation for "light objects" only. (Tr. 1673). He cannot operate foot controls, squat, crawl, or climb but can occasionally bend. (Tr. 1674).

In her decision, the ALJ summarized Dr. Sareen's opinion and explained the weight she assigned it as follows:

> Dr. Sareen's opinion is given little weight as Dr. Sareen only treated the claimant intermittently since 2008 and because the opinion appears to be based primarily on the claimant's subjective complaints and is not supported by the totality of Dr. Sareen's own clinical observations. Substantial objective medical evidence exists in the record also noted above which conflicts with Dr. Sareen's conclusions.

(Tr. 43).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

Here, the Court finds that the ALJ failed to provide good cause for rejecting Dr. Sareen's opinion. Despite stating that Dr. Sareen's opinion findings were based primarily on Plaintiff's subjective complaints, the ALJ provided no support for this assertion. The record does not show that Dr. Sareen's opinion was based on Plaintiff's subjective complaints. Rather, the record reveals that Dr. Sareen conducted multiple physical examinations of Plaintiff before he offered his decision. The record shows that Plaintiff presented to Dr. Sareen beginning in October 2008 with complaints of gradually worsening lower back pain. (Tr. 1595). Dr. Sareen prescribed Darvocet and Flexeril. (Tr. 1595). On January 1, 2009, Plaintiff returned in severe pain and appeared unsteady and shaking. (Tr. 1593). His lower back pain was contributing to difficulty walking more than a block, bending down, and lifting anything heavy. (Tr. 1593). Plaintiff walked with a limp and demonstrated decreased sensation to the left leg and tenderness of the hips and legs. (Tr. 1593). A January 9, 2009 lumbar MRI revealed degenerative disc disease at L1-2 and L3-4 with severe loss of disc space at L3-4, facet joint hypertrophy, and elements of lateral recess stenosis. (Tr. 1591). Furthermore, examinations with Dr. Sareen in May and December 2010 were significant for limping gait, use of a cane to ambulate, and decreased sensation of the left leg. (Tr. 1655-56). A January 31, 2011 lumbar MRI revealed moderate lumbar spondylosis at L3-4 and mild to moderate spondylosis at L1-2. (Tr. 1932). Thus, before Dr. Sareen offered his opinion he had conducted multiple physical examinations of Plaintiff and Plaintiff had undergone multiple MRIs which revealed degenerative changes to L1-2 and L3-4.

Defendant contends that because Dr. Sareen's opinion consists of check marks on a form supplied by Plaintiff's counsel the ALJ reasonably assumed that the opinion was based on Plaintiff's subjective opinions. It is not obvious to the undersigned how it follows that a check-the-box type opinion means that the opinion is "primarily based" on Plaintiff's subjective opinions.

In any event, the evidence above belies the ALJ's finding that Dr. Sareen's opinion was primarily on subjective opinions. Further, this evidence undermines the ALJ's conclusory claim that Dr. Sareen's opinion conflicts with substantial evidence. On remand, the ALJ shall reevaluate Dr. Sareen's opinions, explain the weight accorded the opinions, and, if the ALJ determines the opinion is entitled to little weight, provide good cause with specific examples supporting the ALJ's determination.

### Dr. Hill's Opinion

The record shows that Dr. Hill, one of Plaintiff's physicians at Lee County Medical Solutions, opined on January 23, 2012, that Plaintiff can stand/walk for 1 hour at a time and 1 hour total, sit 1 hour at a time for 2 hours total in an 8-hour workday, and cannot not grasp with the right arm. (Tr. 1689). Further Dr. Hill found that Plaintiff cannot operate foot controls, squat, crawl, or climb but can occasionally bend. (Tr. 1690). In addition, on January 24, 2012, Dr. Hill advised that examinations and testing had shown a neuro-anatomic distribution of pain, limited spinal range of motion, sensory or reflex loss, positive straight leg raise testing, severe burning or painful dysesthesia, the need to change positions more than once every 2 hours, lumbar spinal stenosis, and inability to ambulate effectively. (Tr. 1691). Due to severe pain, she opined that Plaintiff can sit/stand 15 minutes at a time and cannot work an entire 8-hour workday. (Tr. 1691).

In her decision, the ALJ explained the weight accorded Dr. Hill's opinion as follows:

> Dr. Emilya Hill of Lee County Medical Solutions opined in January 2012 that claimant could stand or walk for no more than one hour in an eight hour day, sit for no more than two hours in an eight hour day, lift no weight, could not grasp, push, or pull with the right arm, could only occasionally bend, and could never squat, kneel, or climb. Dr. Hill indicated that these restrictions were in effect since April 2005 and that claimant suffered from "severe" pain with a neuro-anatomic distribution of pain, limitation of motion of the spine, sensory or reflex loss, positive straight leg raising, a need to frequently change positions, spinal stenosis, and had an inability to ambulate effectively (18F). Dr. Hill's opinion is

> given little to no weight as it is inconsistent with other substantial evidence. Furthermore, Dr. Hill did not begin treating the claimant until 2011, her finding that claimant's limitations stem back to 2005 is necessarily based on other records or subjective reports of the claimant and not on direct medical observation. Additionally, Dr. Hill's opinion is inconsistent with her own treatment notes which indicate that claimant's condition was improving and his activity increased with treatment.

(Tr. 43).

Here, the Court finds that the ALJ erred by failing to provide good cause for rejecting the opinions of Dr. Hill. As Plaintiff notes, despite rejecting the opinion on the basis that Dr. Hill's opinion is inconsistent with her own office notes and other substantial evidence, Plaintiff does not provide any examples. Records from Lee County Medical Solutions, where Dr. Hill treated Plaintiff, show pain management treatment between December 2010 and February 2012 and examinations by Dr. Hill and others consistently revealed limping gait, use of a cane to ambulate, decreased sensation, diminished muscle strength, and muscle atrophy of the left leg, lumbar tenderness, and positive straight leg raise testing, worse on the left. (Tr. 1426; 1428; 1431; 1433; 1435; 1437; 1439; 1441; 1443; 1445; 1663; 1665). Furthermore, the record shows that Dr. Kibria, the Agency's consultative examiner who evaluated Plaintiff around the same time as Dr. Hill was treating Plaintiff, in October 2011, noted that Plaintiff tended to sit on his left buttocks and walked with a slow, antalgic, cautious gait with a cane. (Tr. 1693). He used the cane to get out of his chair and could only walk 10 feet without it. (Tr.1693). An examination revealed severely limited passive lumbar range of motion with extension, positive straight leg raise testing at 45 degrees on the left and 70 degrees on the right, inability to heel/toe walk, diminished sensation to light touch and pinprick along the left leg, and hypoactive reflexes. (Tr. 1693). Additionally, the Court notes that Dr. Hill's opinion is generally consistent with the opinion offered by Dr. Sareen.

On remand, the ALJ shall reevaluate Dr. Hill's opinions, explain the weight accorded the opinions, and, if the ALJ determines the opinion is entitled to little weight, provide good cause with specific examples supporting the ALJ's determination.

**Dr. Rizkallah**

The record shows that Dr. Rizkallah, at the Agency's request, conducted a consultative examination of Plaintiff on February 29, 2012. Dr. Rizkallah opined that Plaintiff can occasionally lift/carry 20 pounds, sit 1 hour, stand 1 hour, and walk 20 minutes at one time, sit 8 hours, stand 2 hours, and walk 1 hour total in an 8-hour workday, and required a medically necessary cane to ambulate. (Tr. 1738-39). He cannot climb ladders/scaffolds, balance, stoop, or crouch, but can occasionally crawl, kneel, climb ramps/stairs, reach, and push/pull. (Tr. 1740-41). He cannot travel without a companion for assistance or ambulate without using a wheelchair, walker, or two canes/two crutches. (Tr. 1743).

In her decision, the ALJ analyzed Dr. Rizkallah's opinion as follows:

> Dr. Rizkallah found in February 2012 that claimant could lift up to twenty pounds but that he could not stand or sit for longer than one hour at a time. Claimant could stand for no more than two hours in an eight-hour day but could sit for up to eight hours in an eight-hour day. Dr. Rizkallah found that claimant required a cane to ambulate when moving over ten feet and that claimant was limited in reaching, pushing, pulling, using his feet, and may never climb ladders ropes of scaffolds, or be required to balance, stoop, or crouch. He may occasionally kneel, climb ramps or stairs, or crawl. Claimant also may only be exposed to unprotected heights or moving machines occasionally. Dr. Rizkallah also indicated that claimant was able to shop as necessary, walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, climb a few steps, prepare simple meals, take care of his personal hygiene independently, and sort, handle, or use paper files (24F). Dr. Rizkallah's opinion is given little weight as it is internally inconsistent with itself and with Dr. Rizkallah's treatment notes. While initially finding that claimant was wholly sedentary and is substantially limited posturally, Dr. Rizkallah goes on to indicate that the claimant could engage in several significant activities such as using public transportation, walking a block, shopping, climbing stairs, preparing meals, and handling paper files. Additionally, after noting

> during his exam that the necessity of claimant's use of a cane could not be determined. Dr. Rizkallah then indicated that the claimant required the use of a cane when moving over ten feet. Because of these inconsistencies, the undersigned gives little weight to this opinion and must follow the weight of the other evidence.

(Tr. 43-44).

Here, the Court finds no error in the ALJ's determination that Dr. Rizkallah's opinion was entitled to little weight. As a one-time examiner, Dr. Rizkallah's opinions was not entitled to any special deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (providing that a doctor who examines a claimant on a single occasion is not considered a "treating physician"). Nevertheless, the ALJ considered Dr. Rizkallah's opinion and explained the weight she assigned the opinion. The ALJ noted specific inconsistencies within Dr. Rizkallah's opinion and how Plaintiff's daily activities conflict with his alleged limitations.

### **Dr. Schosheim's Opinion**

On April 5, 2012, Dr. Schosheim, a board-certified orthopedic surgeon, opined that Plaintiff's medically determinable impairments "medically equaled" the requirements of the listing, by considering the combined effect of Listing 1.04 and 12.04 A/B, since April 13, 2005. (Tr. 1758). The ALJ explained the weight he assigned Dr. Schosheim's opinion as follows:

> The opinion of Dr. Peter Schosheim is given little weight as it appears to heavily rely on the findings of left leg pain and lumbar radiculopathy which have since been discredited as noted else ware [sic] in this opinion. Furthermore, Dr. Schosheim's assertions that claimant meets the requirements of adult listings 1.04 and 12.05 are not supported by substantial reference to credible evidence in the record (27F).

(Tr. 44).

Here, although the ALJ mistakenly described Dr. Schosheim's opinion as to whether Plaintiff met Listing 1.04 and 12.05, instead of Listing 1.04 and 12.04, the Court finds no error in the ALJ's decision to accord little weight to Dr. Schosheim's opinion. As the ALJ noted, Dr.

Schosheim failed to explain what evidence satisfied the requirements of the Listings. The ALJ discussed earlier in his opinion whether Plaintiff met or equaled the requires of a Listing, including Listings 1.04 and 12.04 earlier in the decision and found that he did not. (Tr. 32-33).

In sum, the Court finds that the ALJ erred by failing to properly evaluate the respective opinions of Drs. Sareen and Hill. On remand, the ALJ shall reevaluate their opinions, explain the weight accorded the opinions, and, if the ALJ determines the opinion are entitled to little weight, provide good cause with specific examples to the medical record.

Because the ALJ's reevaluation of the opinions of Plaintiff's treating physicians may alter her RFC, credibility finding, and ultimate determination of disability, the Court defers from addressing the other issues raised by Plaintiff at this time.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 1, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties